MISSOURI–KANSAS–TEXAS R. CO. OF
TEXAS v. WADDLES.
No. 5773.

Court of Civil Appeals of Texas. Amarillo.
May 5, 1947.

Rehearing Denied June 9, 1947.

Gullett & Gullett, of Denison, and Freeman, Wolfe & Keith, of Sherman, for appellant.

Webb, Elliott & Rogers, of Sherman, for appellee.

PITTS, Chief Justice.

Appellee, Oscar Waddles, filed this suit under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., on March 2, 1942, against appellant, Missouri-Kansas-Texas Railroad Company of Texas, for damages alleged to have resulted from personal injuries inflicted upon him when a large, vicious yearling attacked him as a result of various alleged acts of negligence of appellant. Appellant answered by general denial, that any injury received by appellee was due to his own negligence or due to an unavoidable accident and that any disability he may have had resulted from a previous disease he had suffered. The cause was tried to a jury and submitted on special issues. The jury found that appellee's injuries were not the result of an unavoidable accident nor as a result of his own negligence but that such injuries and damages resulted from and were proximately caused by various acts of negligence of the agents of appellant for which the jury awarded damages to appellee in the sum of $4,000. The trial court rendered judgment accordingly from which an appeal was perfected to the Court of Civil Appeals of the Fifth Supreme Judicial District and transferred to this Court by the Supreme Court.

The record reveals that appellee is a colored man who had been an employee of appellant for more than twenty years; that on September 8, 1941, he was a stockyard employee of appellant at the Ray Terminal west of Denison, Texas; that his duties were to assist, under the direction of a foreman, in removing cattle that were in transit by rail from the stock cars into appellant's pens for a rest period, after which they were reloaded on the stock cars. The cattle were unloaded from

the car on a platform adjacent to a chute about seventy feet long, which chute leads to an alley which alley is twelve feet wide and some two hundred feet long. The sides of the alley are built out of lumber two inches by six inches nailed to posts. The sides or fences composing the sides of the alley were seven feet high with open spaces or cracks between the planks that composed it. There were several stock pens about thirty-five feet by thirty-six feet on each side of the alley and adjacent thereto. The cattle were moved through the chute into the alley and from there into one of the pens adjacent to the alley for the rest period, at the end of which period they were moved back through the alley into the chute across the platform and into the stock car. There was a gate where the chute intersected the alley that may close the entrance into the chute or open back and close or block the alley so as to help turn the cattle into the chute. There was also a cutoff gate about the middle of the chute and a double gate at the top of the chute adjacent to the loading platform. It was the custom to close the cutoff gate in the middle of the chute after the cattle had passed through it to prevent them from turning back. The double gate opened back from the top of the chute itself so as to make a passageway across the platform into the stock car.

The record shows that at the particular time in question the rest period of the cattle in the pen was over and that they were being returned to the stock cars. Appellee, under the direction of the foreman in charge, had driven the cattle out of the pen into the alley and had driven them along the alley into the chute and from there they were being loaded into the stock car, when a large yearling turned back from the herd, ran out of the chute, down the alley and attacked appellee in the alley before he could climb the fence. The yearling gored appellee against the fence with its head and injured him. The record also reveals that during the process of moving the cattle back to the stock car the foreman in charge, H. R. Calvird, and another employee, Rob Roberts, were somewhere about the chute and that they were called "chute men" while appellee was called an "alley man".

The jury found that all of the cattle had not proceeded beyond the cutoff gate in the middle of the chute "on the occasion in question and prior to the time" appellee was struck but we have no way of determining from the record how long a period of time "prior to the time" appellee was struck that the jury found such condition existed. However, such issue does not appear to be material since the jury further found that "on the occasion in question" appellant's employees failed to close the cutoff gate and that such failure was negligence which negligence was a proximate cause of appellee's injuries. The jury also found that on occasions such as this it was customary for the "chute man" to warn the "alley man" when a yearling cut back from the herd and charged down the alley; that on the occasion in question the yearling in question did cut back from the herd and charge down the alley; that appellant's foreman, Calvird, was following the yearling and therefore knew the said yearling cut back from the herd and was charging down the alley but he failed to so warn appellee; that such failure of Calvird to warn appellee was negligence, which negligence was a proximate cause of appellee's injuries. The jury further found that since appellant's foreman, Calvird, followed the said yearling as it charged down the alley he actually saw and discovered appellee's perilous position in time to have averted the injury to him by the use of all means at his command commensurate with his own safety but that the said Calvird failed to use such means to avoid the injury; that such failure on the part of Calvird was negligence which negligence was a proximate cause of appellee's injury. The jury exonerated appellee from any contributory negligence and found that appellant's negligence was 100 per centum responsible for appellee's injuries.

Appellant groups and presents several points of error together complaining that the trial court erred in overruling its motion for an instructed verdict as well as its motion for judgment upon the jury's ver-

dict and the motion for judgment non obstante veredicto and that the court erred in permitting appellee to recover without evidence to establish the fact that the negligence of appellant was the proximate cause of appellee's injuries.

Appellee testified that after he had driven the cattle out of the pen through the alley and into the chute he heard Mr. Calvird holler "Rob, keep them in" and he knew something had gone wrong at the top of the chute where the cattle were being loaded into the stock car and he thought a yearling had slipped and fallen out on the ground between the car and the platform as they had often done before when being reloaded. He testified that he was half walking and half running along the alley not far from the mouth of the chute looking through the cracks between the boards that build the alley fence or side to see if a yearling was not out; if he so found he would have climbed over the fence and have driven the yearling into a pen or the alley and up the chute again for reloading as he often had done previously when one fell to the ground between the platform and the car when they were being reloaded. He further testified that while he was trotting along looking through the fence to see if one had fallen out, suddenly he saw the yearling in the alley charging toward him about twenty-five feet away with Mr. Calvird chasing the yearling and only about eighteen feet behind it; that he tried to escape by climbing the fence but the yearling caught him, gored him against the fence with its head, and injured him before he could get away. He also testified that it was customary under such circumstances for the chute men to warn the alley man of such danger when a yearling cut back from the herd and charged down the alley but that on this occasion neither Mr. Calvird, Rob Roberts, nor anybody else warned him of the approaching danger as had been their custom previously under such circumstances. Both Mr. Calvird and Rob Roberts, the foreman and another employee of appellant, testified for appellant and they both testified on cross-examination that the alley man was in danger when one or more of the cattle turn back from the herd and run down the alley and for that reason it was their custom to "hollo" and warn the alley man of the approaching danger. Obviously there were issues of fact to be submitted to the jury as well as sufficient evidence of probative force to support the jury's findings that the negligence of appellant's employees was the proximate cause of appellee's injuries. Appellant's points of error to the contrary must therefore be overruled.

Appellant groups several points of error complaining that the trial court erred in submitting over its objections Special Issue Number 10 because "there was evidence to sustain such issue". Evidently it meant to charge that the court erred because there was *no* evidence to sustain such issue and we shall so treat such complaint. It further complains that the court erred in submitting Special Issue Number 11 because "there was no evidence to sustain such issue". Appellant further complains that the trial court erred in submitting Special Issue Number 12 "for the reason that such negligence as was found in Special Issue Number 9 could not, as a matter of law, have been the proximate cause of plaintiff's injuries". Evidently appellant intended to charge that it was error for the court to submit Special Issue Number 12 for the reason that such negligence as was found in answer to Special Issue Number *11* could not, as a matter of law, have been the proximate cause of plaintiff's injury since Special Issue "Number 9" did not inquire about negligence and there was no negligence found by the jury in answer to Special Issue Number 9 while Special Issue Number 11 did inquire about the negligence of appellant's foreman. In answer to Special Issue Number 9 the jury found that appellant's foreman, Calvird, knew that said yearling had cut out from the herd and was charging down the alley. In the light of the apparent confusion in stating the points making such complaints we shall treat them as it appears to us from the record that appellant obviously intended to state them. The jury found that it was customary to warn the alley man when a yearling cut back from the herd and charged down the alley and, as heretofore stated, appellee, Calvird and

Rob Roberts all testified that such had been the custom. The jury further found that on the occasion in question the yearling in question did turn back from the herd and charge down the alley and that the foreman, Calvird, followed the yearling and therefore knew that such was true. Special Issues Numbers 10, 11, and 12, about which appellant here complains, inquire if at the time in question appellant's foreman, Calvird, failed to warn appellee of the approaching danger, if such failure was negligence and if such negligence was a proximate cause of appellee's injuries. To each of the inquiries the jury returned an affirmative answer. The evidence given by the parties heretofore referred to supports such findings and the law authorizes the finding that the negligence found was a proximate cause of the injuries. Texas & P. Ry. Co. v. Baldwin, Tex.Civ.App., 25 S.W.2d 969, affirmed in Tex.Com.App., 44 S.W.2d 909, certiorari denied 287 U.S. 606, 53 S.Ct. 11, 77 L.Ed. 527; Texas & N. O. R. v. Neill, Tex.Civ. App., 97 S.W.2d 279; 29 Tex.Jur. 320-21, Sec. 188, and other authorities there cited. It is our opinion that the issues about which appellant complains were properly submitted to the jury and appellant's points to the contrary are therefore overruled.

■ Appellant further complains that the trial court erred in permitting appellee to recover on the theory of discovered peril when there was no evidence to justify such a recovery. We shall not hold that there was no evidence to justify the submission of the issues on the question of discovered peril since appellee testified that appellant's foreman, Calvird, was chasing the yearling and the jury found that he was following the yearling at the time in question; however the evidence may have been insufficient to support a finding and judgment rendered on the issues of discovered peril alone. There were other grounds of negligence found by the jury, however, upon which appellee was entitled to recover and such other findings of negligence are set out in the judgment as a basis for recovery. It is therefore evident that the judgment did not rest alone upon the findings of discovered peril in which event it

has been many times held that the submission of the issues of discovered peril is not prejudicial error even though such issues may have been erroneously submitted. Northern Texas Traction Co. v. Bryan, Tex.Civ.App., 299 S.W. 325; St. Louis Southwestern Ry. Co. of Texas v. Larkin, Tex.Civ.App., 34 S.W.2d 693; International-Great Northern R. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506. We therefore overrule appellant's point of error complaining about the submission of the law of discovered peril.

Appellant contends that the trial court erred in permitting appellee to recover on a statement of facts that he himself testified were not true. We hold adversely to appellant in this contention since the evidence, and especially that given by appellee himself, consistently supports his recovery as the same has already been hereinabove set out in part and will hereafter be set out more fully.

■ Appellant contends that the trial court erred in charging the jury that it may allow damages for compensation to appellee for future physical pain, discomfort, and suffering beyond the trial as a result of his injuries received on the occasion in question and that it was error to permit him to so recover when there were no pleadings and no evidence to support such recovery. Appellant does not charge that the pleadings were insufficient to support such recovery but contends that there were *no* pleadings to sustain such recovery. Appellee pleaded fully about his injuries received and then pleaded further as follows:

"That he suffered untold mental anguish and physical pain and will continue to suffer throughout life. That he received a severe shock to his entire nervous system. That he sustained a concussion of the brain and all of the injuries are permanent. That by reason of said injuries he has been unable to labor or earn money since said injuries. That his power to labor and earn money in the future has been destroyed."

It is our opinion that appellee's pleadings are sufficient to support the recovery about which appellant complains. Mis-

souri, K. & T. Ry. Co. of Texas v. Box, Tex.Civ.App., 93 S.W. 134; San Antonio & A. P. Ry. Co. v. Weigers, 22 Tex.Civ. App. 344, 54 S.W. 910.

On the question of there being no evidence to support appellee's recovery, the record reveals that appellee testified that his left knee and leg were injured as a result of the yearling "ramming" him against the fence; that he was then hurt "pretty bad" and so told the foreman, Mr. Calvird; that he hobbled to a place· of safety; that others assisted him in getting home where he was placed in bed and his wife and daughter tried to relieve his suffering during the night; that his leg was badly swollen next morning and he was taken in an ambulance to the hospital where he remained from September 9 until October 24; that his knee was punctured and bloody water was drawn out of it after he had been in the hospital several days; and that healing tape was put around his knee; that his knee was still enlarged and· had continued to hurt and give him trouble up to the time of the trial which was four and one-half years after the injury. He further testified that because of his injury he was not able to work; that he was unable to walk without a cane or some other support since his knee would give away and he would fall. Appellant's foreman, Mr. Calvird, testified that appellee was called "Big Boy"; that he had been active and had done a good job as an employee for appellant for a period of more than twenty years; that he had not been fired but was unable to work as an alley man since his injuries. Rob Roberts testified that he helped appellee to the bus just after his injury and that he visited appellee in the hospital while he was there and that appellee appeared to be suffering; that he had seen appellee several times since he got out of the hospital and that "he hasn't ever walked worth nothing since he got hurt".

In connection with appellant's complaint about the court's charge, the record reveals that in submitting Special Issue Number 37 the trial court asked the jury to fix the amount of damages, if any, they found appellee was entitled to from a preponderance of the evidence. In connection with this issue appellee charges without any denial from appellant that the trial court submitted at the request of appellant a special charge limiting the recovery to certain conditions and that the special instructions which appellee contends appellant requested and which were given by the trial court in connection with Special Issue Number 37 is as follows:

"You are instructed that, in connection with your answer to question No. 37, in the main charge of the court, you will not consider or allow anything for any mental and physical pain, discomfort and suffering, if any, or for the reduced capacity of the plaintiff to labor and earn money if any you have found from a preponderance of the evidence which you find to be due to or caused by disease of the plaintiff or injuries sustained· by the plaintiff, other than the injuries, if any, sustained by. him as a direct and proximate result of the occurrences in question in this suit, but will confine yourselves exclusively to such mental pain and suffering, if any, and such physical pain, discomfort and suffering, if any, and such reduced capacity to labor and earn money, if any, as you may find from a preponderance of the evidence the plaintiff has suffered, or. will in reasonable probability suffer, in the future as a direct and proximate result of the injury, if any, received by him on the occasion in question."

It is assumed that appellant is not complaining about the form or sufficiency of the special charge given by the trial court at appellant's request since the rule is well established that a party has no right to complain even about an obvious error if such error has been invited by such party. However, we find no fault with the form or sufficiency of the ·charge given and appellant points out none. On the contrary appellant must have thought there was sufficient evidence to support future pain and suffering when it evidently asked the trial court to limit appellee's recovery in the special charge requested and given. Appellant contends now that there was no evidence in the record to show that appellee would suffer any physical pain or discomforts in the future or that he would in

356

all reasonable probability suffer in the future; nevertheless, appellee testified before the jury as heretofore set out and the jurors observed his condition and demeanor. He described his injury and his sufferings. He spent more than six weeks in the hospital as a result of his injury and said he was still suffering four and one-half years later at the time of the trial. He said he was still lame and could not walk without support and could not work. Appellee's testimony together with the testimony given by appellant's foreman and its other employee, Rob Roberts, was sufficient to warrant the submission of future pain and suffering to the jury and to support its findings thereon. Austin Street Ry. Co. v. Oldham, Tex.Civ.App., 109 S.W.2d 235, writ refused; Quanah, A. & P. Ry. Co. v. Eblen, Tex.Civ.App., 87 S.W.2d 540, writ refused; Missouri, K. & T. Ry. Co. of Texas v. Box, supra. Appellant's points to the contrary are therefore overruled.

Appellant complains that the sum fixed by the jury and allowed by the trial court is excessive while appellee insists that it is not enough. We refer again to the evidence hereinabove set out. In addition, appellee testified he had worked for appellant about twenty-nine years and that he was born June 7, 1890. He was, therefore, fifty-one years of age when he was injured on September 8, 1941, and had worked for appellant nearly all of his adult life. It is stipulated that a life expectancy of an able-bodied, healthy man at fifty years of age is 15.72 years, according to the American Experience Table of Mortality. It is undisputed that he had earned and was earning $85 to $90 per month or $1,020 to $1,080 annually. Appellee testified that his health before his injury had been good except for an attack of malaria fever once and ordinary colds and that he had never been off from work on account of disease. A laboratory technician working for the Missouri-Kansas-Texas Employees' Hospital testified that she made a Wassermann blood test for appellee on July 1, 1941, and found it to be "four plus positive" indicating that he had a syphilitic condition. Dr. Paul Pierce testified that he was employed by the Missouri-Kansas-Texas Association

in September, 1941, and that he had a Wassermann test made of appellee's blood and it showed to be "four plus positive" showing he had syphilis. Appellee testified that no test was ever made of his blood and that nobody had told him he had syphilis. In the case of Pure Oil Co. v. Crabb, Tex.Civ.App., 151 S.W.2d 962, it was held that an award of $25,000 to an uneducated manual laborer for a shattered knee was not excessive where the laborer's livelihood was taken from him when he had suffered intense pain for a long period of time and had been earning from $165 to $170 per month and would have continued to do so for at least twenty years but for his injury. In the case of Chicago, R. I. & G. Ry. Co. v. Frederick, Tex.Civ.App., 74 S.W.2d 275, it was held that damages awarded in the sum of $13,500 to a railroad brakeman for a severe ankle fracture was not excessive when he was disabled from doing his usual railroad work which was the only labor for which he was fitted.

The amount of damages to be awarded in a case such as this is within the province of the jury just as any other fact issue is and it should not be disturbed unless the amount is fixed at an unreasonable sum or unless there is not sufficient evidence of probative force to support the finding. In its charge the trial court limited recovery to the results of the injury. There is nothing in this record to indicate that the jury was actuated by either passion, prejudice, sympathy, or other improper motive. In our opinion the record authorizes the finding of $4,000 as damages for appellee and a judgment awarding such amount. Norten Inv. Co. v. Trevey, Tex. Civ.App., 8 S.W.2d 527; Chicago, R. I. & G. Ry. Co. v. Steele, Tex.Civ.App., 264 S.W. 503; Galveston, H. & S. A. Ry. Co. v. Summers, Tex.Civ.App., 278 S.W. 881; and Galveston, H. & S. A. Ry. Co. v. Cade, Tex.Civ.App., 93 S.W. 124.

Appellant complains that the trial court erred in permitting appellee to file a trial amendment over its objections during the trial. Such a matter is addressed to the sound discretion of the trial court. In this instance the trial amendment did not in

any way allege any part of a new cause of action nor did it contain any new matter necessary to appellee's judgment but appellee pleaded only more specifically in lieu of a general allegation already made in order to make his pleadings more consistent with evidence already heard without any objections from appellant. No new additional facts were heard pertaining to the matter pleaded in the trial amendment after it was filed. In our opinion the trial court did not abuse its discretion in permitting the filing of the trial amendment. Rules 66 and 279, Texas Rules of Civil Procedure, Southwestern Hotel Co. v. Rogers, Tex.Civ. App., 183 S.W.2d 751, affirmed 143 Tex. 343, 184 S.W.2d 835; Ellis v. Michigan Realty Co., Tex.Civ.App., 138 S.W.2d 880.

Appellant contends that it was error for the trial court to permit appellee to testify that he had not received a pension from the Railroad Retirement Board or from the railroad as a result of his injuries. The record reveals that the matter about which appellant here complains was gone into for the first time by appellant during cross-examination of appellee. On such cross-examination appellant proved by appellee that he had worked for apellant about twenty-nine years and that he would have been eligible for a retirement pension if he had worked for appellant 354 months or 29 years and six months; that appellant's foreman, Mr. Calvird, talked to appellee about applying for a pension and that Mr. Calvird told him if he did not take a pension "he wouldn't get nothing". Appellant further proved by appellee at such time that Mr. Calvird told appellee if he would dismiss his law suit they would try to help him get the pension. Following such cross-examination appellee did inquire further about such matters but such came after appellant had already injected the question into the record. For these reasons appellant should not be heard to complain and such complaint and contention by appellant is therefore overruled.

We have carefully examined the record and all assignments of error and have not found any reversible error. The judgment of the trial court is therefore affirmed.