## SHIELD v. DONALD.

### No. 15377.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 5, 1952.

Rehearing Denied Dec. 26, 1952.

Joe H. Cleveland, of Bowie, John O. Harris, of Coleman, and James R. Meyers and Coleman Gay, both of Austin, for appellant.

Donald & Donald, of Bowie, for appellee.

CULVER, Justice.

Appellee's motion for rehearing is granted.

The opinion heretofore rendered in this cause is withdrawn and the following substituted:

There is involved in this case the title to one-half of the minerals in 252 acres of land situated in Montague County, Texas.

The appellant, Elgean Shield, at the time the owner of the full fee simple title, conveyed in 1930 an undivided one-half mineral interest to Texas Standard Oil and Royalties, Inc., the deed being recorded in December of that year. Three years later, the appellant gave a deed of trust, in regular form, covering the 252 acre tract to secure the payment of certain promissory notes. The deed of trust lien was foreclosed and on February 7, 1938, the land sold at trustee's sale to Federal Farm Mortgage Corporation, which deeded the tract to one Lewis, who thereafter conveyed to appellee on April 16, 1938, the deed being recorded January 14, 1946.

On the 25th of November, 1938, Texas Standard Oil and Royalties, Inc., by Elgean Shield as President, conveyed to Elgean Shield, among other properties, the mineral interest in controversy, the deed being attested by Flora J. Shield, wife of Elgean Shield, as Secretary.

On January 17, 1939, the Texas Standard Oil and Royalties, Inc., was dissolved by consent of all stockholders. A dispute arose as to the amount of stock ownership between Elgean Shield and his sister-in-law, Mrs. Ema C. Shield, which was terminated by judgment in the district court of Coleman County on the 14th day of June, 1943, setting forth that Mrs. Shield owned a 750/1000ths interest, Elgean Shield owned 200/1000ths interest and five others owning each an undivided 10/1000ths interest in all assets of the defunct corporation at the time of its dissolution. Subsequently, appellee purchased whatever interest these parties had in the Montague County mineral interest, except the 200/1000ths interest owned by Elgean Shield.

Judgment was rendered in this case by the district court holding title good in appellee Donald in respect to this mineral interest. The court found that the deed given by Elgean Shield, acting as President of the Texas Standard Oil and Royalties, Inc., to himself "passed no title and was void," and that the 200/1000ths interest owned by Shield in the assets of the defunct corporation passed to appellee Donald under the "after acquired title" doctrine. The court also found that appellee Donald was an innocent purchaser for value of the property in controversy.

■ Appellant bases his appeal upon five points: "The trial court erred (1) in holding appellee a bona fide purchaser; (2) in holding that the deed from Texas Standard Oil and Royalties, Inc., passed no title to appellant; (3) in holding that the judgment partitioning the real estate owned by Texas Standard Oil and Royalties, Inc., had any effect on the undivided mineral interest here involved; (4) in holding that under the after acquired title doctrine title vested in appellee; and (5) if the deed from Texas Standard Oil and Royalties, Inc., to appellant is invalid, he still is the owner of 200/1000ths undivided mineral interest."

Manifestly, the first point must be sustained for the reason that the deed of Elgean Shield to the corporation conveying one-half of the minerals had been of record since 1930, some eight years before appellee Donald acquired this property in 1938.

■ While the deed from Shield, acting as President of the corporation, to himself is not void but only voidable, Brooks v. Zorn, Tex.Civ.App., 24 S.W.2d 742; Coleman v. Luetcke, Tex.Civ.App., 164 S.W. 1117, we are of the opinion that the evidence is sufficient to support the finding of the court that the same passed no title. This deed was not offered for recordation until after the present suit had been filed, some seven years after the deed purported to have been executed by Shield. While Shield testified that this deed had been executed with the knowledge and consent of all the other stockholders, nevertheless, he being a party to this suit, the court was not bound to believe such testimony. Giannukes v. Sfiris, 125 Tex. 354, 81 S.W.2d 999; Himes v. Himes, Tex.Civ.App., 55 S.W.2d 181; Pierce v. City of Stephenville, Tex.Civ.App., 206 S.W.2d 848. A circumstance tending to disprove the consent of the other stockholders to this conveyance was the fact that Shield was having a dis-

agreement at the very time with the other principal stockholder, his sister-in-law as to the ownership of a majority of the stock in this corporation. The deed to Shield purported to convey not only the mineral rights involved here but one-half the minerals in ten other tracts covering some 4,473 acres located in Reagan and Glasscock Counties. Shield does not claim that he paid any consideration therefor but says that the deed was a part of the consideration for the dissolution of the corporation and that he was authorized to get his money back. There is no testimony from any other source that the other stockholders ever knew anything about this deed, or even knew that the properties conveyed by the deed belonged to the corporation. The Coleman County judgment, referred to above, carefully provided that, in addition to the property described therein, any and all other properties owned by the corporation, wherever situated, should be owned in the same proportion by the stockholders.

We think the letter written by Shield to appellee, dated July 11, 1939, and the statements made therein by appellant tend to support the court's finding that the deed conveyed no title. In this letter, written several months after the dissolution, referring to the mineral interest in question, he says: "I had executed a deed to my royalty company one-half of the mineral rights in perpetuity." Again, he asserts, "I am the President, my wife the secretary, and the Company is all family held, of the Texas Standard Oil and Royalties. It now controls over 16,000 royalty acres. 125 royalty acres in Montague."

The second and third points are therefore overruled.

■ The trial court did not err in holding that the "after acquired title doctrine" operated to vest in appellee the title to whatever undivided mineral interest was later acquired by Shield subsequent to the execution of the deed of trust by appellant Shield to H. I. O. Shield. A title subsequently acquired to land by a vendor who has previously conveyed same under a war-

ranty of title passes eo instante to the vendee. Cherry v. Farmers Royalty Holding Co., 138 Tex. 576, 160 S.W.2d 908.

■ The rule as to an after acquired title applies to mortgages as well as to deeds. Clark v. Gauntt, 138 Tex. 558, 161 S.W.2d 270. Since Shield, in the mortgage given by him, purported to convey and warrant title to the whole tract, notice, either actual or constructive, had nothing to do with the right of appellee to recover for the breach of the covenant of general warranty so contained in such mortgage, and under the circumstances in this case, it was not necessary that the appellee raise the issue of estoppel by an affirmative pleading thereof. Frels v. Schuette Tex.Civ. App., 222 S.W.2d 1006; see also Kulow v. Farmers Royalty Holding Co., 144 Tex. 312, 190 S.W.2d 60.

It is observed that the deed by which appellee Donald acquired title to the property in question was limited as follows: "It is understood and agreed that one-half interest in and to the oil, gas, and other minerals in and under the above described property are hereby warranted, and not otherwise. * * *" A similar restriction appeared in the deed to appellee's grantor, reading: "to warrant and forever defend all and singular the said premises unto the said J. B. Lewis, his heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, in so far as the surface and one-half (½) interest in and to the oil, gas and other minerals, in, to and under the above described property are concerned, and no further."

The purchaser under the deed of trust having conveyed the fee simple title to the tract of land, it is believed that these two qualified warranties in appellee's chain of title will not preclude the application of the general rule, all the deeds in his chain of title purporting to convey the fee simple title to the tract.

We therefore overrule appellant's points four and five and affirm the judgment of the trial court.