Elgean SHIELD and Shield Oil & Gas Company, Appellants,

v.

Donald L. SHIELD et al., Appellees.

No. 5102.

Court of Civil Appeals of Texas.

El Paso.

Dec. 7, 1955.

Rehearing Denied Dec. 28, 1955.

Sutton, Steib & Barr, San Angelo, for appellants.

Snodgrass & Smith, San Angelo, Goldberg, Fonville, Gump & Strauss, Dallas, for appellees.

HAMILTON, Chief Justice.

This is an appeal from a judgment rendered below for plaintiffs, who sued for judicial determination of their ownership of minerals under four sections of land in Glasscock and Reagan Counties, Texas, and for an accounting to plaintiffs by the defendants below, who were co-tenants with plaintiffs, and who were alleged to have executed oil and gas leases covering the plaintiffs' mineral interest. The court below decreed that certain mineral interests covered by oil and gas leases executed by defendants, belonged to plaintiffs below, and decreed that a proportional share of bonus payments and rentals received by defendants belonged to plaintiffs and gave judgment to plaintiffs for such amount.

It appears that a dispute between appellant Elgean Shield and plaintiffs' predecessor in title as to ownership of the minerals under the land in question began a number of years ago. A short history of the ownership of the minerals in question will be helpful: Prior to February 20, 1936, Leon L. Shield, who was the father of the plaintiffs, Donald L. Shield and Mrs. Bob Montgomery, together with his brother, I. O. Shield, his brother Elgean Shield, his sister Camille Shield Wallace, Shield Brown, and a corporation known as Texas Standard Oil & Royalties, Inc., owned certain undivided mineral interests in lands located in Coleman, Brown, Glasscock, Reagan and Montague Counties in the State of Texas. Said corporation, together with the persons just named, jointly owned the oil, gas and other minerals in and under the following described lands, among other lands situated in Reagan and Glasscock Counties, Texas: Surveys 25 and 36, Block 35, Glasscock County, and Surveys 37 and 38, Block 35, Glasscock and Reagan Counties, Texas. By instrument of date February 20, 1936, the said joint owners, including Texas Standard Oil & Royalties, Inc., partitioned the mineral interests jointly owned in the above described lands, as well as other lands in those counties. Under such partition agreement Leon L. Shield received the surface and one-half the minerals of said Section 38, Block 35, the west 230 acres of Section 37, and the south 205 acres of said Section 36, and Texas Standard Oil & Royalties, Inc., received one-half of the oil, gas and other minerals in said lands. Elgean Shield received the surface and one-half of the minerals in Section 25, Block 35, and the north 435 acres of Section 36, Block 35, and Texas Standard Oil & Royalties, Inc., received the other one-half of all the oil, gas and other minerals in and under said lands.

As can be seen from this deed, Texas Standard Oil & Royalties, Inc., owned one-half of the minerals in said Sections 25, 36, 37 and 38 in Block 35, and it is these minerals which are the subject matter of this litigation. Appellants and appellees all trace their title to the minerals owned by the Texas Standard Oil & Royalties, Inc. The surface of said lands and the other undi-

vided one-half of the minerals in these sections were subsequently conveyed to Edwin J. Glass, and were so owned at the time of this litigation and were not and are not in dispute in this case. Mrs. Emma C. Shield was the widow of Leon L. Shield, who died May 26, 1937, and acquired his stock interest in Texas Standard Oil & Royalties, Inc. under his will. Appellees herein derive their title through Emma C. Shield.

On January 17, 1939, Texas Standard Oil & Royalties, Inc., was dissolved by action of all parties owning stock in said corporation. There was a dispute as to the ownership of 598 shares of stock. Mrs. Emma Shield claimed the 598 shares of stock which Elgean Shield also claimed by virtue of a certificate purported to have been issued to him. In 1943 Mrs. Emma Shield brought suit for partition of the mineral interests owned by the Texas Standard Oil & Royalties, Inc., predicating her claim to certain mineral interests upon the ownership of such 598 shares.

The issue of the validity of the certificate to said 598 shares standing in the name of Elgean Shield was tried to a jury with a finding to the effect that such certificate was forged, and final judgment was entered on October 30, 1943, in the district court of Coleman County, Texas, determining the proportionate ownership of Emma C. Shield and Elgean Shield in the mineral interests owned by Texas Standard Oil & Royalties, Inc., and partitioned certain described parcels thereof in kind.

The partition judgment and decree was predicated upon Texas Standard Oil & Royalties, Inc., owning a $9/25$th interest in minerals under said Sections 25, 36, 37 and 38, whereas, as shown above, the corporation at the time of its dissolution and at the time of trial actually owned an undivided one-half interest in these minerals. The partition judgment, after setting out the particular interest of each party, used language which is hereinafter referred to as the "catch-all clause", to-wit:

"It being further made to appear to the Court that there may be other oil and gas mineral properties located in Texas which Texas Standard Oil & Royalties, Inc., owned at the time of the dissolution of said corporation, which other properties are not described in and directly involved in the partition herein decreed, it is therefore further ordered, adjudged and decreed, in keeping with the preliminary decree and judgment herein that all oil, gas and mineral properties and all other assets whatsoever of Texas Standard Oil & Royalties, Inc., owned by said corporation at the time of its dissolution and which are not described in this decree of partition be and the same are hereby owned jointly, as follows, to-wit:

"An undivided $790/1000$th interest therein by the plaintiff Emma C. Shield, individually and as independent executrix of the will of the estate of Leon L. Shield, deceased, and by her attorneys, J. B. Dibrell, Jr., and C. L. South in the proportion of $1/2$ of such undivided interest by said plaintiff, $1/4$ of such undivided interest by J. B. Dibrell, Jr., and $1/4$ of such undivided interest by C. L. South, $200/1000$ undivided interest therein by the defendant Elgean Shield, and $10/1000$ undivided interest by the defendant Geo. J. Schrup."

There was introduced in evidence in the instant case below, a deed bearing date November 25, 1938, executed by Texas Standard Oil & Royalties, Inc., by Elgean Shield, President, to Elgean Shield, individually, purporting to convey to him all the minerals in controversy in this case formerly owned by the Texas Standard Oil & Royalties, Inc., including mineral interests under 215.16 acres of land in Montague County. This deed was shown not to have been recorded until January 1947. There was no showing that such deed was authorized by the Board of Directors, but on the contrary, a showing was made that neither the directors nor the stockholders authorized such conveyance. The genuineness and effectiveness of this deed was an issue in 1947, in case No. 10,276 in the District Court of Montague County, Texas,

97th Judicial District, from which the court adjudged and determined that the purported deed passed no title to Elgean Shield. Elgean Shield prosecuted an appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, at Fort Worth, which court affirmed the district court's adjudication, Shield v. Donald, Tex. Civ.App., 253 S.W.2d 710, and the Supreme Court on February 25, 1953, refused a writ of error on the ground of no reversible error. This purported deed was not offered by Elgean Shield in his defense during the trial of the partition suit by Mrs. Emma Shield against him in 1943.

By date October 4, 1951, the appellants Elgean Shield and Shield Oil & Gas Company executed and delivered three oil and gas leases covering the lands involved herein, receiving from lessees a bonus aggregating $44,500, which consideration was paid by drafts which evidence on their face that they were in payment for the exact number of mineral acres claimed to be owned by both the appellants and the appellees together. The bonus payment of $44,500 was based upon an agreed price of $50 per acre, and there was reserved in each of said oil and gas leases a one-eighth royalty and an over-riding royalty. Appellees on the trial of the case below ratified and confirmed said leases, upon which ratification appellees based their claim for a share of the bonus money received by the appellants, based on appellees' proportionate interest of oil and gas and other minerals lying under the lands described in said leases, as well as for a like proportionate share of delay rentals, royalties and the overriding royalties provided for in said leases.

After all the evidence was in, on motion of plaintiffs below, the trial court withdrew the case from the jury and rendered judgment for the plaintiffs.

Appellants predicate their appeal upon five points, as follows:

1. The trial Court erred in holding that Edwin J. Glass, the owner of the surface estate and of an undivided ½ of the minerals to the lands in controversy, was not a necessary and indispensable party to the suit, and in requiring appellants to proceed with the trial without said Glass being made a party.

2. The trial Court erred in permitting the plaintiffs to file their trial amendment, which changed plaintiffs' theory of the case, to the serious prejudice and surprise of the appellants.

3. The trial Court erred in not permitting appellants to withdraw their announcement of ready and in refusing to continue the case, after granting permission to plaintiffs, over appellants' objections to file their trial amendment.

4. The trial Court erred in withdrawing the case from the jury and rendering judgment thereon in favor of the plaintiffs, there having been competent evidence on each and every issue of fact.

5. The trial Court erred in entering the judgment for the plaintiffs for the percentages of interest and in the amounts of money shown in the judgment, for the reason that said percentages of interest and said amounts of money awarded the plaintiffs are wholly without support of the competent evidence in the record, and are contrary to law, and are the result of and based upon erroneous interpretation and application of certain deeds and judgments.

■ Appellants' point No. 1 is overruled. The one-half interest in the minerals owned by Edwin J. Glass was never at any time involved in this suit. The subject matter of the suit was the ownership of one-half of the minerals previously owned by the Texas Standard Oil & Royalties, Inc., and the only necessary parties are those who claim an interest in that mineral interest. The owner of the other one-half is not a necessary party. Bryan v. Bryan, Tex.Civ.App., 262 S.W.2d 736.

■ Appellants' points Nos. 2 and 3 are overruled. In appellees' first amended original petition they sued for damages as well as for their proportionate amount of the bonus, delay rental and royalty. During the trial, the court allowed the appel-

lees to file a trial amendment which abandoned their plea for damages and which ratified the leases executed by appellants. We do not believe that the court abused its discretion in allowing such trial amendment. Missouri-Kansas-Texas R. Co. of Texas v. Waddles, Tex.Civ.App., 203 S.W. 2d 350; Rule 56, Texas Rules of Civil Procedure.

Appellants' fourth point complains of the court withdrawing the case from the jury and rendering judgment for the plaintiffs, there having been competent evidence on each and every issue of fact. We will presume that the appellants mean there was competent evidence disputing each and every necessary fact upon which the court based its judgment. The case was tried on the theory that the appellants herein sold oil and gas leases covering appellees' mineral interests and had collected the bonus and delay rentals on appellees' proportionate mineral interests, and that although appellees were not bound to recognize said leases, they did have an option to either ratify the leases as executed by appellants covering appellees' mineral interests, or they could repudiate such leases on the ground that appellants had no authority to sell oil and gas leases on appellees' mineral interests; that the appellees having chosen to ratify the leases were entitled to a recovery against appellants for their (appellees') proportionate amount of bonus and any delay rentals that had been paid appellants by the lessees. Appellants contend they did not lease any mineral interests of appellees, but that they own all mineral interests that were purported to be leased, and were entitled to collect all the consideration provided in said leases.

■ The necessary facts upon which the court based its judgment were: First—that appellees had title to the respective mineral interests allotted to them in the judgment; Second—that the leases executed by appellants covered those interests; Third—that appellants collected the bonus and rentals paid by lessees for the respective interests of appellees and have not accounted to them for same. We think the evidence with reference to these facts upon which the court based its judgment is undisputed. The court in allotting the various mineral interests to the parties, relied solely on the 1943 partition judgment, and while there may be a dispute as to the interpretation to be placed upon the judgment, there is no dispute of the fact with reference thereto. Appellants rely on the 1938 deed from Texas Standard Oil & Royalties, Inc., to Elgean Shield for title to the minerals on which they purported to execute the leases in question. We think there are two good reasons why appellants have no title to any of said minerals by virtue of the 1938 deed. First: Said deed conveyed no title to Elgean Shield because it is affirmatively shown by the evidence in this case that there was never any authority given by the Board of Directors of Texas Standard Oil & Royalties, Inc., or by the stockholders of said corporation for Elgean Shield to execute any such deed to himself. Second: This very deed was involved in a lawsuit in Montague County in 1947, where the District Court held that the deed conveyed no title to Elgean Shield. That case was appealed to the Court of Civil Appeals at Fort Worth and there affirmed, and a writ of error was refused by the Supreme Court. Shield v. Donald, Tex.Civ.App., 253 S.W.2d 710. Under the doctrine of stare decisis the adjudication in that case that no title passed by virtue of the deed of 1938 from Texas Standard Oil & Royalties, Inc., to Elgean Shield is final and binding on the courts in this state. 26 Tex.Jur. 46. Benavides v. Garcia, Tex. Com.App., 290 S.W. 739, 741.

■ Appellants contend that the 1943 judgment only disposed of %25 of the interest in the minerals which the Texas Standard Oil & Royalties, Inc. owned under the lands in question, when in fact said company originally owned one-half of such minerals. However, the above quoted clause in the 1943 judgment which is referred to as the "catch-all clause", undertook to dispose of all the oil, gas and mineral properties and assets whatsoever of Texas Standard Oil & Royalties, Inc., belonging to said corporation at the time of

its dissolution which were not specifically described in the decree of partition. We do not think there is any question but what this clause in the judgment disposed of the entire mineral interests owned by the Texas Standard Oil & Royalties, Inc. at the time of its dissolution, and the court was correct in determining the mineral interests involved in this suit based on the specific interests partitioned in the 1943 judgment and the "catch-all clause" in said judgment.

■ ■ We also think there is no question but that the leases executed by appellants purported to cover the interest owned by appellees as well as appellants' interest. While the leases themselves purported to cover all of the mineral interests under the lands described, when they are construed

together with the drafts attached it can easily be determined what mineral interest was intended to be covered in said leases. That where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other, is a principle of law well established. 17 C.J.S., Contracts, § 298, pp. 714–715. Each of the leases in question had attached to it a draft drawn by the agent of lessee, payable to appellants, for the amount of bonus agreed to be paid for each lease. Each of said drafts also set out the number of mineral acres that were being leased and paid for. The lessee of the land described, except for Block number and county, the mineral acres covered, and the consideration provided for in each lease, are set out below, as follows:

| Lessee | Land described | Mineral acres covered | Consideration. |
|---|---|---|---|
| Lamar Hunt Trust Estate | W/2 Sec. 38 W/ 230 acres Sec. 37 | 182.5 | $9,125.00 |
| Nelson Bunker Hunt Trust Est. | E/2 Sec. 25 W/2 Sec. 36 | 320 | 16,000.00 |
| Placid Oil Co. | W/2 Sec. 25 E/2 Sec. 36 E/2 Sec. 38 | 387.5 | 19,375.00 |
| | | 890.0 | $44,500.00 |

The 890 mineral acres covered by the leases was the total amount of mineral acres owned by appellants and appellees under the lands described. It is the same number of mineral acres owned by the Standard Royalties, Inc. at the time of its dissolution and which interest was disposed of in the 1943 partition judgment. Also, it was the same amount of mineral interest that was purported to be conveyed in the Standard Royalties deed of 1938 to Elgean Shield. Elgean Shield testified that in executing the leases in question he was leasing the mineral interest of which he had record title, and that the 1938 deed was his record title. Elgean Shield testified that he sold the above leases on the basis of $50 per

acre. The above drafts amount to $44,500, which is exactly fifty times 890. We do not see how the trial court could arrive at any other conclusion than that the leases purported to convey the interest of appellees as well as that of appellants.

■ The fact that appellants, some eight or ten days after this transaction, furnished lessees with another set of leases covering the same lands, each of which had inserted after the description of the land the following:

("Representing all of the lessor's undivided interest only").

does not change the situation, even though one of the lessees, to-wit, the Lamar Hunt

Trust Estate, did record the second lease. There was no change in the number of mineral acres purported to be leased, there was no return of any of the consideration paid, there was no showing that appellants had abandoned their claim to all of the mineral interests purported to be covered in the 1938 deed from Standard Royalties, Inc. to Elgean Shield. The court could very properly have considered the second set of leases as executed to prevent a cloud on the title of Edwin J. Glass, who owned the other half of the mineral under the lands involved. The third necessary fact upon which the court based its judgment was that the appellants received all of the consideration for said leases and the rentals subsequently paid covering the interests of appellees. The above leases attached to the drafts were placed in the Capitol National Bank of Austin, Texas, on the 4th of October, 1951, by appellants, with instructions to deliver the leases upon payment of the attached drafts. The drafts showed they had been paid on October 5th. Elgean Shield, one of the appellants and president of Shield Oil & Gas Company, the other appellant, when asked by one of the appellees herein as to what became of the money paid for the leases, replied: "I went south with it." Appellant Elgean Shield makes the point that since all of his interest in and to said minerals had subsequently been acquired by the Shield Oil & Gas Company and was owned by the Shield Oil & Gas Company at the time the leases were executed that he could not be held personally liable for any of the money received for said leases. The leases were executed by both appellants, the drafts were made payable to both of the appellants, jointly, and the proceeds from said drafts were paid to them jointly. The rule is that when money belonging to other parties is received on the joint account of several defendants they are jointly liable. 58 C.J.S., Money Received, § 23, p. 929.

There being no dispute as to these essential facts upon which the court based its judgment, we overrule appellants' point No. 4, which complains of the court withdrawing the case from the jury and rendering judgment for plaintiffs.

The appellants in their point No. 5 complain of the court's rendering judgment for the plaintiffs for the percentages of interest and the amounts of money shown in the judgment. As has been stated previously, the court arrived at the amounts due plaintiffs based on the proportionate mineral interest owned by each of them as was determined in the 1943 partition judgment. In that judgment the court failed to dispose of any interest of the parties to that suit by specific reference to Survey 37 in Reagan County and Survey 25 in Glasscock County. Appellants contend that this failure was the result of a mere typographical error, and contend that the court below should have construed the judgment as though the mineral interests of such sections were disposed of by specific reference, even though there is nothing in the judgment by which one could determine that there were typographical errors. There was no pleading, neither was there any proof that Section 645 in Reagan County, Texas, was the same as Section 37, Reagan County, Texas, or that Survey 35, Glasscock County, Texas was the same as Survey 25 in Glasscock County. We understand that such proof would have to be made from the records of the case in the 1943 judgment. None was made. The court in apportioning the amount of money to the respective mineral interests under said sections 37 and 35 relied upon the above quoted "catch-all clause" in the 1943 partition judgment, and in this we think it was correct and overrule appellants' point No. 5.

The judgment of the court below is in all things affirmed.