**Ole H. McKEE, Appellant,**
**1956 Chevrolet,**

v.

**STATE of Texas, Appellee.**

No. 6778.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 27, 1958.

Rehearing Denied Nov. 24, 1958.

114

Chaney & Harless, Dallas, for appellant.

Henry Wade, Dist. Atty., and John J. Orvis, Asst. Dist. Atty., Dallas, for appellee.

CHAPMAN, Justice.

The State of Texas, appellee, through the District Attorney's Office of Dallas County, instituted this suit in the court below under Art. 725d, Vernon's Penal Code for confiscation and forfeiture of a 1956 Chevrolet automobile apprehended in the City of Dallas by its officers while allegedly being used in the transportation of narcotics, to-wit: marijuana.

Trial was had before a jury but after all parties completed their testimony the trial court concluded, from the evidence presented, there was no fact issue to be

submitted to the jury, dismissed them and entered judgment for appellee declaring the automobile forfeited to The Texas Department of Public Safety and ordering it sold by the Sheriff of Dallas County at public auction as provided for under the provisions of Sec. 8 of the above named article of Vernon's Penal Code.

The record before us shows the record title to the automobile sought to be forfeited was in Ole H. McKee of Oklahoma City, Oklahoma. At the time it was stopped on the evening of October 14, 1956, it was being driven by Robert William Dolph and sitting beside him was Nancy Oleen Smith, the automobile owner's twenty year old daughter. It is without contradiction in the evidence that McKee had loaned the car to his daughter to go to the Texas-Oklahoma University football game in Dallas, that he had told her not to let anyone else drive it because of a clause in his insurance policy, that she was a widow and that she and her small child were living with her father and mother in Oklahoma City at the time. It is also in the record that McKee was personally acquainted with Dolph, who had been in his home Tuesday or Wednesday of the week of the Dallas trip but the record does not show he knew Dolph was going to the game with his daughter. The testimony shows that she left their home about 6:00 A.M., October 13, 1956, alone. Though Dolph was not used as a witness one of the arresting officers sought to contradict McKee's testimony by quoting Dolph at the time of the arrest as follows:

"Q. What did Dolph say about the ownership and possession of the car? A. He said he had permission to drive the car.

"Q. Did he say from whom? A. He said from Nancy's father."

The record further reveals that a Mrs. Lisotta had called the Dallas Police Department concerning some marijuana that was in a valise or suitcase of Dolph's in her house and the Special Service Bureau of the Police Department had called Officer Stringfellow by radio to investigate the report. Stringfellow called two other officers, Hallmark and Rebstock to go with him to 6343 Bryan Parkway, a two-story house in charge of Mrs. Lisotta, where Dolph and Nancy Oleen Smith had spent the Saturday night before the arrest. Mrs. Lisotta told Officer Stringfellow that earlier in the day she had passed by the room occupied by Dolph and had smelled what she had believed to be marijuana cigarette smoke. She took him to the front room of the house where there was some baggage on the floor, opened the baggage, unquestionably without authority from Dolph, and showed him two complete and one partially smoked cigarettes which later developed to be marijuana. The partially smoked cigarette had lipstick on it. A subsequent chemical analysis showed the two cigarettes and the partially smoked one contained 9 grains of marijuana.

After Officer Stringfellow had been in the house a short time he heard the Chevrolet car come back and left out through the back door, joining his fellow officers parked across the street about a half block away.

After Dolph and Nancy Smith had been in the house a few moments they came out with several pieces of luggage, put them in the trunk of the Chevrolet and left. The officers followed them to the 4100 block on Live Oak Street at North Haskell, stopped them at a light, had the driver, Dolph, pull around on Haskell Street out of the heavy traffic and searched the car. They testified they found the two complete cigarettes and the partially smoked one wrapped in some foil paper in a side pocket of the valise. Stringfellow testified they both denied knowing what the cigarettes were and how they got there. The testimony shows Mr. McKee was in the insurance business in Oklahoma City. He admitted his daughter had been previously arrested and filed on for transportation of marijuana but had not been convicted.

We shall discuss all four points raised by appellant but not in the order briefed. Under the fourth point of error complaint is made of the trial court entering judgment for appellee when the officer had been guilty of entrapment in arresting Dolph before he transported the marijuana. Under the facts of this case appellant's contention is not well taken. The criminal design is not shown to have originated with the officers nor does the record show that they implanted in the mind of Dolph the disposition to commit the offense out of which the present forfeiture developed. Where the criminal intent originates in the mind of the accused, the fact that the officers furnish the opportunity for the commission of the offense constitutes no defense. Stevens v. State, 133 Tex.Cr.R. 333, 110 S.W.2d 906, 911; Cooper v. State, 162 Tex.Cr.R. 624, 288 S.W.2d 762, 763; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 211, 77 L.Ed. 413. In the last case cited the Supreme Court of the U. S., in an opinion by Mr. Chief Justice Hughes has said: "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." Accordingly, appellant's fourth point is overruled.

The question of illegal search and seizure raised by appellant's third point is also without merit. In 37B T.J. pp. 527, Sec. 68, it is said, "All persons have a right to free passage along a highway without interruption or search unless the officer has probable cause for believing that their vehicles are carrying contraband or illegal merchandise, in which case a search and seizure are valid * * *. The reasonableness of the search does not necessarily depend upon the inability to procure a warrant in time to make an effective search." There is no doubt from the record of this case that the officers had more than sufficient probable cause to justify the action

taken if their testimony is to be believed. See also Article 725b, Sec. 15, Vernon's Ann.P.C.; New Way Lumber Co. v. Smith, 128 Tex. 173, 96 S.W.2d 282; Weaver v. State, 123 Tex.Cr.R. 529, 59 S.W.2d 396; Tendia v. State, 111 Tex.Cr.R. 627, 13 S.W.2d 849. Appellant's point of error complaining of illegal search and seizure is overruled.

Appellant's first point of error goes to the failure of the trial Court to hear the forfeiture within 30 days from the date of his filing of a verified answer, as provided in Sec. 5 of Art. 725d, Vernon's Ann.P.C. Such answer was filed on November 26, 1956, and the case was tried on July 23, 1957. The question here presented is whether such 30 day time requirement is directory or mandatory.

Subsection (d) of section 4, Art. 725d, Vernon's Ann.Penal Code provides, "If a person was in possession of the subject matter sought to be forfeited at the time that it was seized, such person shall likewise be made a party defendant to such suit." Subsection (c) of Sec. 4 of the same article requires service on any record lien holders. It may well be seen that situations would arise in many instances where service could not be had on record lien holders within the 30-day period from the filing of the verified answer, thus making the 30-day requirement impossible of fulfillment. Subsection (e) of Sec. 4 of said statute forbids the trial court from proceeding to trial on the forfeiture until he is satisfied that Subsections (c) and (d) of Sec. 4 above mentioned have been complied with. The record does not show in this case why it was not set for trial within the 30-day period.

In City of Uvalde v. Burney, 145 S.W. 311, 312, Mr. Justice Fly, speaking for the San Antonio Court of Civil Appeals said, "It is the rule that a departure from statutory provisions as to the time or mode of doing a thing required or permitted by law will not usually invalidate the proceedings thereunder, although there is no universal,

infallible rule by which directory provisions may, under all circumstances, be distinguished from those which are mandatory."

In Gibson v. Davis, Tex.Civ.App., 236 S.W. 202, 210 the Galveston Court in quoting extensively from the Burney case just cited, quotes with approval as follows: "Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."

This rule just quoted is again affirmed in State v. Fox, 133 S.W.2d 987, 990, by the Austin Court of Civil Appeals in quoting with approval from Sutherland's Book on Statutory Construction, as follows:

"Provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer."

Our Supreme Court has said in Chisholm v. Bewley Mills, 155 Tex. 400, 287 S.W.2d 943, 945:

"There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory. The fundamental rule is to ascertain and give effect to the legislative intent. Although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be merely directory. In determining whether the Legislature intended the particular provision to be mandatory or merely directory, consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction. Provisions which are not of the essence of the thing to be done, but which are included for the purpose of promoting the proper, orderly and prompt conduct of business, are not generally regarded as mandatory. If the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction."

When the rules just quoted are applied to our case and the statute considered as a whole we believe Sec. 5 of Art. 725d, Vernon's Penal Code, providing cases under this article shall be set for hearing within the 30-day period of the date of filing the verified answer is directory and not mandatory.

The action of the trial court in taking this case away from the jury and rendering judgment himself for the State of Texas furnishes appellant's grounds for complaint in his second point.

The penal statute here under consideration provides: "If it shall appear that the owner of the * * * vehicle * * * has filed a verified answer denying the use of such * * * vehicle * * * in violation of this Act, then the burden shall rest upon the State, represented by the District Attorney to prove *as in other penal* cases, the violation of the provisions of this Act." Section 6.

In a discussion of forfeitures the text writer in 37 C.J.S. Forfeitures § 5e, p. 15 under Character of Procedure says, "The character of the procedure for the enforcement of a forfeiture depends on the

statute under which the forfeiture is sought to be enforced. Forfeiture proceedings may be either civil or criminal in nature, and may be in rem or in personam. If they are under a statute such that if an indictment is presented the forfeiture can be included in the criminal case they are criminal in nature, although they may be civil in form; and where it must be gathered from the statute that the action is meant to be criminal in its nature it cannot be considered as civil. *If, however, the proceeding does not involve the conviction of the wrongdoer for the offense charged the proceeding is of a civil nature.* (Emphasis added.) Therefore, it follows that this is a civil statutory in rem forfeiture, even though we are dealing with a criminal statute.

■ It is conceded by all parties that under the statute just quoted the burden was on the State to prove the offense of transporting the contraband narcotic beyond a reasonable doubt. A "reasonable doubt" has been held to be a doubt founded upon reason, and does not mean every conceivable kind of doubt, or doubt that may be purely imaginary, fanciful, captious or speculative, but an honest doubt that appeals to reason and is founded upon reason. United States v. Haupt, D.C., 47 F.Supp. 836, 840.

■ All three officers used as witnesses testified the 1956 Chevrolet automobile in question was being used in transporting the contraband narcotics at the time it was intercepted and that Dolph was driving it with appellant's daughter sitting by his side. The chemist who examined the extracts of the Cannabis plant testified to the effect that the 2½ cigarettes contained enough of the prohibited narcotic to make 4 average cigarettes. Appellant in his sworn verified answer admitted, and in fact affirmatively alleged that the cigarettes were taken on the occasion in question from Dolph's luggage. The evidence is uncontradicted that the cigarettes were in the luggage being transported by the Chevrolet automobile in question, and that it was being driven by Dolph. Under this state of the record and in view of the authority of State v. Richards, Tex., 301 S.W.2d 597, there was not anything to submit to the jury.

Our Supreme Court has held that a court is authorized to render judgment without submitting the case to the jury if the facts upon which the judgment is based are supported by undisputed evidence. Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377. See also Steele v. Ainsworth, Tex. Civ.App., 249 S.W.2d 656; Shield v. Shield, Tex.Civ.App., 286 S.W.2d 252.

Though we think the rule announced in the Richards case, supra, which holds that one completely innocent of the act, or knowledge that a contraband narcotic is being transported in his automobile, is subject to having such vehicle confiscated and forfeited is a harsh rule, we are bound by that pronouncement in this court. In passing it might be well to say that the record in this case does not show appellant completely blameless, he having admitted that his daughter, Nancy Oleen Smith had been arrested and filed on in Oklahoma City for transporting narcotics even though she was not convicted. He let her take the car from Oklahoma City to Dallas with knowledge of this fact. Accordingly, the judgment of the court below is in all things affirmed.