**Abdelkader AMRANI-KHALDI et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1410.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 29, 1978.

Gary N. Patterson, Bonilla, Read, Nutto, Bonilla, Inc., Corpus Christi, for appellants.

Kenneth G. Botary, Eric G. Brown, Asst. Dist. Attys., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

Involved in this appeal is the forfeiture of an automobile which was allegedly used by Abdelkader Amrani-Khaldi, one of the defendants, to transport for delivery hashish, a controlled substance. The State of Texas, pursuant to the provisions of Tex.Rev.Civ. Stat.Ann. art. 4476–15 § 5.03(a)(5) (1976) brought suit against the above-named defendant and Deborah Amrani-Khaldi, his wife, whereby it sought to forfeit the automobile, a 1974 Plymouth Duster. Trial was to the court, sitting without a jury. Judgment was rendered which forfeited the automobile to the State. Defendants have appealed. We reverse and render.

The trial court filed findings of fact and conclusions of law. The trial court found that the defendant used the automobile in question on January 17, 1978, "to transport for delivery" hashish.

Abdelkader Amrani-Khaldi, hereinafter referred to as the "Defendant", was stopped by police officers on January 17, 1978, after he was seen leaving the residence of one Denise Hayhorst at 701 Atlantic, Corpus Christi, Texas, in a 1974 Plymouth Duster automobile. Nine hundred seventy-three (973) grams of hashish were found in the automobile. It is conclusively established that hashish is a controlled substance.

In their first point of error, the defendants claim, in substance, that the trial court erred in rendering judgment which forfeited the automobile in question because the automobile was the community property of the defendant and his wife, Deborah, and even if the husband was using the automobile on January 17, 1978, to transport for delivery a controlled substance, the community ownership of the wife barred the forfeiture since she, being an owner of the automobile, did not know that the automobile was being used for such purpose and did not consent thereto. We do not agree.

It is undisputed that the 1974 Plymouth Duster automobile was owned by the defendants as a part of their community property. It is further undisputed that Mrs. Amrani-Khaldi neither knew that the automobile was to be used by her husband on January 17, 1978, to transport for delivery a controlled substance, nor consented to such use.

The marital community in this State is a creature of the Constitution. Tex.Const. art. 16, § 15. Pursuant to this constitutional provision, Tex.Fam.Code § 5.61 (1975) provides, in part, that the "community property subject to a spouse's sole or joint management, control and disposition is subject to the liabilities incurred by him or her before or during marriage." It plainly adopts the principle that one spouse can obligate the community property of his or her spouse without the consent or knowledge of the other spouse. We hold that community property is not exempt from forfeiture where such property is used by a spouse in such a manner as to contravene Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 5.03 (1976), even though such property is so used

by one spouse without the knowledge or consent of the other spouse. See *People v. One 1939 La Salle 8 Touring Sedan, Engine No. 2301026,* 45 Cal.App.2d 709, 115 P.2d 39 (1941); *People v. One 1941 Buick Club Coupe, Serial No. 13935358,* 72 Cal.App.2d 593, 165 P.2d 44 (1946); *State v. One 1968 Buick Electra, Delaware Registration 43003,* 301 A.2d 297 (Del.Super.1973). Defendants' first point is overruled.

The defendants, in their fourth point of error, assert that there was no evidence that the defendant used the automobile on January 17, 1978, "to transport for delivery" the 973 grams of hashish. In disposing of that point, we consider only the evidence and permissible inferences which tend to support the trial court's findings and judgment, as required by *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965).

■ Tex.Rev.Civ.Stat.Ann. art. 4476–15, denominated the "Texas Controlled Substances Act," was enacted by the 63rd Legislature and became effective on August 27, 1973. It superseded and repealed the "Uniform Narcotic Drug Act," Articles 725b–725d, V.A.P.C.

With respect to forfeitures of vehicles, vessels or aircraft used in transporting narcotics and other prohibited substances, Section 1 of Article 725d, made it unlawful:

"(a) to transport, carry or convey any contraband narcotic in, upon or by means of any vessel, vehicle or aircraft or any occupants thereof;

(b) to conceal or possess any contraband narcotics in or upon any vessel, vehicle or aircraft or occupants thereof;

(c) to use any vessel, vehicle or aircraft or occupants thereof to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange or gift of any contraband narcotic."

Section 2 of Article 725d, in relevant part, provided

"Any vessel, vehicle or aircraft which is being used in violation of Section 1 of this Act, shall be seized and forfeited to the Texas Department of Public Safety, Narcotics Section  .  .  .;  and provided further, no vessel, vehicle or aircraft shall be forfeited where it is shown that the illegal act has been committed by some person other than the owner and without the owner's knowledge."

Thus under the old law, an owner's vehicle could be forfeited based upon nothing more than the mere transportation of a contraband narcotic by the owner, or by another person with the owner's knowledge. *State v. Cherry,* 387 S.W.2d 149 (Tex.Civ. App.—Dallas 1965, no writ); *Mosse v. State,* 332 S.W.2d 383 (Tex.Civ.App.—Dallas 1960, no writ); *State v. Meyers,* 328 S.W.2d 321 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.); *McKee v. State,* 318 S.W.2d 113 (Tex.Civ.App.—Amarillo 1958, writ ref'd n. r. e.). Under the new law such is not the case.

Concerning forfeitures, Section 5.03(a)(5) of the Controlled Substances Act (the new law), in pertinent part, reads:

"(5) any conveyance, including aircraft, vehicles, vessels, trailers, and railroad cars, that is used or intended for use *to transport for delivery* or in any manner facilitate the transportation for delivery of any property described in paragraph (1), (2), or (3) of this subsection  .  .  . shall be forfeited under this subchapter  .  .  . [provided] *no conveyance shall be subject to forfeiture if the delivery involved is an offer to sell.*" (Emphasis supplied).

Definitions, for the purposes of the Controlled Substances Act, are set out in Subchapter 1 of the Act. Section 1.02(8), in part, reads:

"(8) 'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. For the purposes of this Act, it also includes an offer to sell a controlled substance  .  .  . "

Regarding the burden of proof, where, as is the case here, the owner of the property has filed a verified answer denying that the

property is subject to forfeiture, Section 5.07(b) of the Act provides:

" . . . the burden is on the state to prove beyond a reasonable doubt that the property is subject to forfeiture . . "

On January 16, 1978, a parcel from Morocco, addressed to 710 Atlantic, Corpus Christi, Texas, was opened by the United States Postal authorities. It was found to contain hashish. The Narcotics Division of the Corpus Christi Police Department was notified of the arrival of such a package. It was decided that the parcel would be delivered to the above address by the regular mail carrier. The residence of Ms. Hayhorst was placed under surveillance.

At approximately 1:47 o'clock p. m. on January 17, 1978, the postman delivered the package to Ms. Hayhorst at 701 Atlantic. At about 1:55 o'clock p. m., the defendant arrived at Ms. Hayhorst's apartment in the Plymouth Duster automobile. Shortly thereafter, he exited the residence carrying a white shopping bag, which later turned out to contain the hashish. He was apprehended by the police a few blocks away.

The 973 grams of hashish, which the defendant had in his possession in the automobile at the time he was stopped by the police, amounted, in common parlance, to four "bricks." Officer Escamilla testified that this was the largest quantity of hashish that she had ever seen; that a person would not use for his own personal use more than one gram a day; and that the street value of the hashish was $61,686.00. Mr. Donald Thain, a chemist for the Texas Department of Public Safety, said that 973 grams was an uncommonly large amount of hashish. Sergeant Zarate, a police officer of 21 years and a narcotics officer for 8 years, stated that he had never seen a person with as much as one "brick" of hashish for his own personal use.

The State argues:

"The trial court, as the fact finder, could reasonably infer that the appellant transported the hashish for delivery."

We would be inclined to agree but for the literal meaning of Section 5.03(a)(5) of the Act. There is nothing ambiguous or uncertain about the wording of the Controlled Substances Act; hence, there is no need to explore its legislative history, and we are not at liberty to depart from the literal meaning of Sections 1.02(8) and 5.03(a)(5) of the Act. Therefore, the rule which permits such departure has no application here as the intention of the legislature as expressed in the Act is clear, unequivocal and free from doubt. We may not invade the legislative field. *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (Tex.Sup.1961). "If Parliament does not mean what it says, it must say so." *Newton v. Barnes,* 150 S.W.2d 72 (Tex.Civ.App. —San Antonio 1941, writ ref'd).

The unusually large quantity of hashish possessed by the defendant was the only evidence produced at trial which could possibly have any bearing with respect to his purpose in transporting the hashish in his automobile. We are thus faced with the issue of whether or not it was inferable, beyond a reasonable doubt, from the sheer quantity of hashish involved, that he was transporting the drug for "delivery" at the time he was apprehended. We hold that it was not.

Furthermore, in construing Section 5.03(a)(5) of the Act we must adhere to the rule that a statute imposing penalties or forfeitures is strictly construed in determining whether it applies to persons or actions not clearly included in the language of the statute. *City of San Marcos v. Lower Colorado River Authority,* 508 S.W.2d 403 (Tex. Civ.App.—Austin 1974) *aff'd as mod.* 523 S.W.2d 641 (Tex.Sup.1975). That rule is particularly applicable in the case at bar because a comparison of former article 725d, V.A.P.C., and the Texas Controlled Substances Act shows that an obvious purpose of the legislature in repealing article 725d and enacting the Texas Controlled Substances Act was to narrow the range of circumstances upon which the State could forfeit a vehicle used to transport drugs. Section 5.03(a)(5) of the Act clearly provides for forfeiture *only* where a vehicle was used

to transport controlled substances "for delivery." The term "delivery" is used in the forfeiture provisions of the Act with a deliberately constricted meaning. Throughout the other subchapters of the Act, the term "delivery" denotes any type of transfer to a third person *including* an offer of sale; however, in the forfeiture provisions in Subchapter 5, the term "delivery," as that term is defined in the first sentence of Section 1.02(8), means any type of transfer to a third person *except* an offer to sell.

There is no direct evidence that, on January 17, 1978, the defendant was transporting the hashish for the purpose of delivering any part of it to a third person. Unquestionably, the State, either by direct or circumstantial evidence, was required to establish, beyond a reasonable doubt, that the defendant was using the automobile on the date in question to transport the hashish for delivery to some third person. There is no basis for an inference that he was transporting the contraband for the purpose of giving any part to some third person. It could be reasonably inferred from the extremely large amount of the hashish involved that the defendant planned to sell at least part of it at some future date or dates to third parties. But, the transporting of a controlled substance for the purpose of making "offers to sell" is not, by the express provisions of Section 5.03(a)(5) of the Controlled Substances Act a ground for forfeiture of an automobile. Hence, we cannot hold that the State proved beyond a reasonable doubt that the 1974 Plymouth Duster automobile was subject to forfeiture under Section 5.03(a)(5) of the Act.

We realize that our holding in this case places an extremely difficult burden upon the State to establish the element of "delivery" in forfeiture cases where the contraband is being transported by a vehicle. Based upon the definition of the term "delivery" in Section 1.02(8) of the Controlled Substances Act and our construction of Section 5.03(a)(5) of the Act, however, we can reach no other conclusion. In drafting that section of the statute the legislature obviously intended to restrict forfeiture to the singular situation in which the owner of the automobile has a present intent to transfer a controlled substance to a third party pursuant to an existing agreement or understanding.

Since we find no evidence of probative force to support the trial court's finding that the defendants' automobile was used to transport hashish "for delivery" to a third person, we have no choice but to reverse the trial court's judgment and to render judgment that the State take nothing. Defendants' fourth point is sustained.

Our holding makes it unnecessary to dispose of defendants' remaining points of error.

The judgment of the trial court is REVERSED and judgment is RENDERED that the State take nothing by its suit and that the automobile in question be returned to the defendants.