ACCEPTED
03-14-00704-CV
5027089
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/24/2015 2:58:04 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00704-CV

IN THE
COURT OF APPEALS
OF THE THIRD SUPREME JUDICIAL DISTRICT

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/24/2015 2:58:04 PM
JEFFREY D. KYLE
Clerk

**2004 Dodge Ram 1500 TX LP#CPL1988 and
2000 Buick TX LP#CV1N8187**

**v.**

**The State of Texas**

## APPELLEE'S BRIEF

Appeal from the 20th Judicial District Court
Milam County, Texas
Trial Court Cause No. CV36,279

**Milam County District Attorney's Office**
204 N. Central
Cameron, Texas 76520
(254) 697-7013
(254) 697-7016 – Facsimile
jjohnson@milamcounty.net
State Bar No. 24092587

## ORAL ARGUMENT REQUESTED

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### State of Texas

The Honorable W. W. Torrey
Milam County District Attorney
204 N. Central
Cameron, Texas 76520

### Appellant's Counsel

Benton Ross Watson
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520

### Trial Court Judge

The Honorable John Youngblood
20th District Court Judge
102 S. Fannin Ave., 2nd Floor
Cameron, Texas 76520

# TABLE OF CONTENTS

NAMES OF THE PARTIES TO THE FINAL JUDGMENT……………………..ii
TABLE OF CONTENTS………………………………………………..…..…...iii
INDEX OF AUTHORITIES………………………………………………………….v
REQUEST FOR ORAL ARGUMENT……………………………………..….....vii
STATEMENT OF THE CASE…………………………………………………..vii
ISSUES PRESENTED…………………………………………………………...viii
STATEMENT OF FACTS………………………………………………………1
SUMMARY OF THE ARGUMENT……………………………………………6
ARGUMENT……………………………………………………………………8
ISSUE ONE: FORFEITURE OF THE VEHICLES IS NOT BARRED BY THE STATUTE OF LIMITATIONS DESPITE THE STATE'S FAILURE TO SERVE APPELLANT WITHIN THIRTY DAYS OF SEIZURE BECAUSE APPELLANT'S FILING OF AN ANSWER DISPENSED WITH THE NECESSITY OF SERVICE AND ALTERNATIVELY THE STATE EXERCISED DUE DILIGENCE IN SEEKING TO SERVE ALL KNOWN STATUTORY CLAIMANTS AND OFFERED REASONABLE EXCUSE……..8

    1. APPELLANT'S ANSWER AND OTHER DEFENSIVE MEASURES DISPENSED WITH THE NECESSITY OF SERVICE OF PROCESS AND CONSTITUTES WAIVER OF APPELLANT'S STATUTE OF LIMITATIONS DEFENSE…………………………………………………….8

    2. THE STATE USED DUE DILIGENCE IN ATTEMPTING SERVICE OF PROCESS ON ALL STATUTORY CLAIMANTS THAT THE STATE KNEW OF OR HAD REASON TO KNOW OF AND OFFERED A REASONABLE EXCUSE FOR LACK OF TIMELY SERVICE ON APPELLANT………………………………………………….…...11

ISSUE TWO: THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT WAS APPROPRIATE BECAUSE THE STATE ESTABLISHED PROBABLE CAUSE AND ESTABLISHED THAT THE VEHICLES WERE USED IN THE COMMISSION OF A FELONY, AND FINALLY APPELLANT'S DEFENSES LACK MERIT…………………………………………………………………15

    1. THE STATE ESTABLISHED PROBABLE CAUSE TO SEIZE THE VEHICLES AND USE OF THE VEHICLES IN THE COMMISSION OF A FELONY BASED ON THE CONFIDENTIAL INFORMANT'S INFORMATION FOUND IN DEPUTY WHITE'S AFFIDAVIT………...15

    2. APPELLANT'S STATUTE OF LIMITATIONS, INNOCENT OWNER, AND EIGTHTH AMENDMENT PROPORTIONALITY DEFENSES LACK MERIT………………………………………………………...18

      a.  STATUTE OF LIMITATIONS DEFENSE………………………...18
      b.  INNOCENT OWNER DEFENSE…………………………………….18
      c.  EIGHTH AMENDMENT PROPORTIONALITY DEFENSE……..19
PRAYER FOR RELIEF……………………………………………………….22
CERTIFICATE OF SERVICE………………………………………………..23
CERTIFICATE OF COMPLIANCE………………………………………...24

# INDEX OF AUTHORITIES

**United States Supreme Court Cases**

*United States v. Bajakajian*,
 524 U.S. 321 (1998)……………………………………………………….20

**Texas Supreme Court Cases**

*Gant v. Deleon,*
 786 S.W.2d 259 (Tex. 1990)…………………………………………...1

**Texas Court of Criminal Appeals**

*State v. Duarte,*
 389 S.W.3d 349 (Tex. Crim. App. 2012)…………………………...16

**Texas Appellate Court Cases**

*$18,800 in United States Currency v. State*,
 961 S.W.2d 257 (Tex. App. Houston 1st Dist. 1997, no writ)…...................19
*$24,156.00 in United States Currency v. State,*
 247 S.W.3d 739 (Tex. App. Texarkana 2008, rehearing
 overruled)…........................................................................................10, 11
*$27,920.00 in United States Currency v. State,*
 37 S.W.3d 533 (Tex. App. Texarkana 2001, writ denied)………………9, 10
*1996 Dodge X-Cab Truck v. State*,
 122 S.W.3d 422 (Tex. App. Beaumont 2003, no pet.)……………………..20
*Amrani-Khaldi v. State*,
 575 S.W.2d 667 (Tex. Civ. App. Corpus Christi 1978, no
 writ)…………………………………………………………...4, 13, 18, 19
*Gaston v. State*,
 641 S.W.2d 261 (Tex. App. Houston 14th Dist. 1982, writ denied)…………
 …………………………………………………………………..19
*Hopkins v. State*,
 2003 Tex. App. LEXIS 1448 (Tex. App. Fort Worth Feb. 13, 2003)………...
 …………………………………………………………………...19
*Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.,*
 2 S.W.3d 482 (Tex. App. Tyler 1999)…………………………….…....12

**Texas Code of Criminal Procedure**

TEX. CODE CRIM. PROC. art. 59.04(a)……………………………………………1
TEX. CODE CRIM. PROC. art. 59.04(b)……………………………………………1
TEX. CODE CRIM. PROC. art. 59.04(j)…………………………………………...13

**Texas Rules of Civil Procedure**

TEX R. CIV. P. 22…………………………………………………………...8

TEX R. CIV. P. 120………………………………………………………………9

TEX R. CIV. P. 121………………………………………………………………9

**Texas Family Code**

TEX. FAM. CODE. ANN. § 3.202…………………………………………...…19

## REQUEST FOR ORAL ARGUMENT

Appellee requests that oral argument be granted. Appellee believes oral argument would benefit the Court's understanding of the details of the case.

## STATEMENT OF THE CASE

This case involves Appellant's challenge to the trial court's grant of summary judgment in favor of the State in an asset forfeiture case pursuant to Texas Code of Criminal Procedure Article 59.

## ISSUES PRESENTED

I.      Whether Appellant may assert the statute of limitations defense as such to bar forfeiture in this case? Or, if Appellant may indeed assert such defense, whether the State acted with due diligence in seeking to serve all statutory claimants and provided reasonable excuse for lack of timely service on Appellant?

II.     Whether the trial court erred in granting of State's Motion for Summary Judgment to the State?

<u>STATEMENT OF THE FACTS</u>

Sedderick Alcorn (hereinafter "Mr. Alcorn") was arrested based on motions to revoke probation in two counts of Delivery of Controlled Substance Less Than One Gram, Enhanced, a third degree felony. Mr. Alcorn pled true to the motions to revoke and was sentenced to ten years in prison.

Prior to that on March 6, 2014, Chief Deputy Chris White of the Milam County Sheriff's Office seized the contraband (hereinafter "the vehicles") in this case, both the 2004 Dodge Ram 1500 (hereinafter "Dodge") and the 2000 Buick 4-door sedan (hereinafter "Buick").[1] Both vehicles were seized from Mr. Alcorn's residence in Rockdale, Texas. LaToya Williams, later identified in Appellant's Response to State's Motion for Summary Judgement as LaToya Alcorn (hereinafter "Mrs. Alcorn"), was at the house at the time of seizure. She signed inventory forms and retrieved some items from the vehicles.[2]

A certificate of title search was performed on the vehicles to determine the registered owners according to the Texas Department of Motor Vehicles.[3] The Dodge came back registered to a James Rackley (hereinafter "Mr. Rackley"). The Buick came back registered to a Gil Shamsher (hereinafter "Mr. Shamsher").[4] On

---

[1] I C.R. 10.
[2] *Id.* at 225-6.
[3] *Id.* at 10-1.
[4] *Id.*

1

March 18, 2014, the State filed the Original Notice of Seizure and Intended Forfeiture.[5] On March 28, 2014, the State served citation on registered owners, Mr. Shamsher and Mr. Rackley, and Mr. Alcorn, as either a possible owner or one merely in possession of the vehicles.[6]

Initially, the only statutory claimant who responded to the service was Mr. Alcorn. On April 7, his response came in the form of a handwritten answer stating, among other things, "I detest all allegations."[7] Mr. Alcorn was sent interrogatories on April 25, 2014, which he failed to answer.[8] On May 28, 2014, Mrs. Alcorn filed an answer in this case. It came in the form of a general denial and it did not provide the court or the State any basis as to why Mrs. Alcorn should be a party in the suit.[9] Despite Mrs. Alcorn's failure to provide the State with any basis for a claim on the vehicles, either as a potential owner, a possessor, or other interest holder, the State sent Mrs. Alcorn interrogatories.[10] In her answer to the interrogatories, Mrs. Alcorn finally notified the State that she was claiming an ownership interest in the vehicles. Mrs. Alcorn explained that she was claiming both a "monetary and community property interest" in the vehicles.[11]

---

[5] *Id.* at 5.
[6] *Id.* at 5-12.
[7] *Id.* at 25.
[8] *Id.* at 54.
[9] *Id.* at 26.
[10] *Id.* at 68.
[11] *Id.* at 74, 79.

The State subsequently filed a First Amended Notice of Seizure and Intended Forfeiture.[12] In that amended notice, the State added Mrs. Alcorn as a statutory claimant.[13] The State's First Amended Notice of Seizure and Intended Forfeiture was served on Mrs. Alcorn's counsel.[14]

Eventually, though not formally answering in the suit, Mr. Rackley did contact the State regarding his interest. In his writing, Mr. Rackley disclaimed any interest in the Dodge. Subsequently, a stipulated agreement was made between the State and Mr. Rackley, which waived any interest that Mr. Rackley may have had in the Dodge.[15] Likewise, a default judgment was rendered against Mr. Shamsher's interest in the Buick.[16] At that time, no party produced a bill of sale or other document indicating a transfer of title.

At that point, the only potential claimants remaining in the case were Mr. and Mrs. Alcorn. The State filed State's Motion for Summary Judgment against both Mr. and Mrs. Alcorn.[17] Because Mr. Alcorn failed to respond to any discovery, The State moved to deem admissions against Mr. Alcorn.[18] Mr.

---

[12] *Id.* at 331.
[13] *Id.* at 332.
[14] *Id.* at 336.
[15] *Id.* at 28.
[16] *Id.* at 107.
[17] *Id.* at 35.
[18] *Id.* at 37, 54.

Alcorn's deemed admissions proved that the vehicles were contraband and forfeited any ownership or possessory rights Mr. Alcorn had to either vehicle.[19]

In the State's Motion for Summary Judgment against Mrs. Alcorn, the State relied on the rule from *Amrani-Khaldi v. State*.[20] The State argued that Mrs. Alcorn was an improper party. Specifically, it was the State's contention that Mrs. Alcorn lacked standing based on the rule from *Amrani-Khaldi*. The State further argued that Mrs. Alcorn produced no evidence proving either element of the innocent owner affirmative defense, the only affirmative defense provided by statute in a forfeiture suit.[21]

Mrs. Alcorn filed a First Amended Answer along with a response to the State's Motion for Summary Judgment.[22] For the first time, Mrs. Alcorn asserted the innocent owner, statute of limitations, and Eighth Amendment proportionality defenses.[23] Ultimately, the trial court recognized that Mrs. Alcorn had standing as a statutory claimant.[24] Despite that, the trial court granted the State's Motion for Summary Judgment on all counts and found that Mrs. Alcorn was not pleading

---

[19] *Id.* at 54.
[20] *Id.* at 35, 38-43; *Amrani-Khaldi v. State*, 575 S.W.2d 667, 669 (Tex. Civ. App. Corpus Christi 1978).
[21] *Id.* at 38-43.
[22] *Id.* at 127, 130.
[23] *Id.* at 130-329.
[24] *Id.* at 347-8.

4

affirmative defenses in good faith.[25] Mrs. Alcorn moved for a new trial, but the

trial court denied her motion.[26] Mrs. Alcorn then appealed to this court.[27]

---

[25] *Id.* at 351-3.
[26] I C.R. Supp 138.
[27] I C.R. 369.

## SUMMARY OF THE ARGUMENT

The Court should affirm, or alternatively remand for further proceedings, the judgment of the trial court for two primary reasons.

First, despite the lack of timely service on Appellant, Appellant's answer is a general appearance that dispensed with the necessity of service of process and waived Appellant's statute of limitations defense.

Even if Appellant's answer did not waive Appellant's statute of limitations defense, the State acted with due diligence where it sought timely service on all known potential claimants. The State's lack of knowledge is a reasonable excuse in light of the steps it took to ascertain all potential claimants. Once the State became aware that Appellant was claiming an interest in the vehicles, the State quickly confirmed Appellant's status as a potential claimant.

Second, the trial court's grant of summary judgment was appropriate because the State's confidential informant supplied credible and reliable information to the affiant which established probable cause to support the seizure. The same information proved that the vehicles were used in the commission of a felony.

Additionally, Appellant's affirmative defenses against summary judgment lack merit. Appellant either waived the statute of limitations defense or the State

has a reasonable excuse for lack of timely service. Appellant cannot assert the innocent owner defense because community property is not exempt from forfeiture even though such property is used by one spouse without the knowledge and consent of the other spouse. Appellant's Eighth Amendment proportionality defense fails to consider the higher level of culpability in this case as such to warrant forfeiture of the vehicles.

ARGUMENT

ISSUE ONE: FORFEITURE OF THE VEHICLES IS NOT BARRED BY THE STATUTE OF LIMITATIONS DESPITE THE STATE'S FAILURE TO SERVE APPELLANT WITHIN THIRTY DAYS OF SEIZURE BECAUSE APPELLANT'S FILING OF AN ANSWER DISPENSED WITH THE NECESSITY OF SERVICE AND ALTERNATIVELY THE STATE EXERCISED DUE DILIGENCE IN SEEKING TO SERVE ALL KNOWN STATUTORY CLAIMANTS AND OFFERED REASONABLE EXCUSE.

1.  APPELLANT'S ANSWER AND OTHER DEFENSIVE MEASURES DISPENSED WITH THE NECCESSITY OF SERVICE OF PROCESS AND CONSTITUTES WAIVER OF APPELLANT'S STATUTE OF LIMITATIONS DEFENSE.

Service of process in civil asset forfeiture is governed by the Texas Rules of Civil Procedure.[28] The general rules regarding service of process in asset forfeiture requires that the State shall "commence proceedings . . . not later than the 30th day after the date of seizure."[29] A civil action commences with the filing of suit, but such suit must be filed within the applicable statute of limitations.[30] Generally, even when the petition is timely filed, suit will be barred by the statute of limitations unless the plaintiff exercises due diligence in serving the defendant with process within the statute of limitations period.[31]

In some cases, however, service of process may be waived. A defendant may, in person or by his agent, enter an appearance in open court which "shall

---

[28] TEX. CODE CRIM. PROC. art. 59.04(b).
[29] TEX. CODE CRIM. PROC. art. 59.04(a).
[30] TEX R. CIV. P. 22.
[31] *Gant v. Deleon*, 786 S.W.2d 259, 260 (Tex. 1990).

have the same force and effect as if citation had been duly issued and served as provided by law."[32] Rule 121 expands on this provision by stating that "an answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him."[33]

In *$27,920.00 in United State Currency v. State*, the State did not attempt to serve process on the owner of a vehicle from which contraband was seized.[34] The owner, making a claim on the contraband, answered in the suit and filed a Motion to Return Funds. The owner argued on appeal that the State's failure to serve him barred seizure. However, the court found that the owner's answer and "filing of the motion in court constituted an appearance and waived the necessity of service of process."[35] The court explained further that the filing of such a "defensive measure", coupled with no effort to make a special appearance, waived the owner's limitations defense.

Here, the facts are analogous to those upheld on in *$27,920.00*. Appellant made an appearance when she intervened in the suit by filing an answer to defend against the State.[36] Additionally, Appellant took further defensive measures when

---

[32] TEX R. CIV. P. 120.
[33] TEX R. CIV. P. 121.
[34] *$27,920.00 in United States Currency v. State*, 37 S.W.3d 533 (Tex. App. Texarkana 2001).
[35] *Id.* at 536.
[36] I C.R. 26.

she filed a motion to contest State's Motion for Summary Judgment.[37] There is no evidence in the record that Appellant made – or even sought to make – a special appearance or otherwise challenge the court's jurisdiction. Under these facts and the rules in *$27,920.00*, Appellant made an appearance by filing an answer in the court and taking defensive measures which dispensed with the necessity of service of process.

Appellant cites *$24,156.00 in United States Currency v. State* as authority for the proposition that service of process is not waived by generally appearing in suit.[38] Appellant fails to cite the whole rule. The rule states that a party's general appearance does not waive service of process, but *only* where service of process occurs outside of the statute of limitations period *and* the State has not used due diligence in serving the defendant.[39] *$24,156.00* is factually distinguishable from the instant case. In that case, the defendant did not file an answer or otherwise make a general appearance in the case. In fact, defendant's counsel made only a request for admissions on the State "several months" after the Notice of Seizure and Intended Forfeiture was received.[40] Even when Defendant finally challenged

---

[37] I C.R. 130.
[38] *$24,156.00 in United States Currency v. State*, 247 S.W.3d 739, 740 (Tex. App. Texarkana 2008).
[39] *Id.* at 747.
[40] *Id.* at 741.

the statute of limitations, he did so via a bill of review.[41] Here, Appellant filed an

answer, took other defensive measures, and did not ever proceed on a bill of

review. Thus, the rules as applied in *$24,156.00* do not fit with the facts in the

instant case. Conversely, the facts in *$27,920.00* are strikingly similar to those in

the instant case, and offer clearer precedent.

2. THE STATE USED DUE DILIGENCE IN ATTEMPTING SERVICE OF PROCESS ON ALL PARTIES THAT THE STATE KNEW OF OR HAD REASON TO KNOW OF AND OFFERED A REASONABLE EXCUSE FOR LACK OF TIMELY SERVICE ON APPELLANT.

Even if the Court decides that the rule announced in *$27,920.00* does not

control and instead *$24,156.00* does, then the State has still met its obligations. As

mentioned *supra*, the rule in *$24,156.00* is "[a] party's general appearance in a suit

does not waive service of process when the appearance occurs after the limitations

period has run and the plaintiff has not used due diligence in serving the party."[42]

*$24,156.00* also explains the standard for whether due diligence has been

exercised:

Generally, the question of reasonable diligence is a fact question; however,

if no excuse for the lack of timely service is offered, or the time passed

between filing of the suit and the State's actions negate the possibility that

reasonable diligence existed, lack of diligence will be found as a matter of

---

[41] *Id.* at 742.
[42] *Id.* at 747.

law. *One 1991 Chevrolet Blazer,* 905 S.W.2d at 445; *Three Thousand Six Hundred Thirty-Nine Dollars ($ 3,639.00) in U.S. Currency v. State,* 133 S.W.3d 698, 700-01 (Tex. App.--Corpus Christi 2003, no pet.). The two controlling factors that establish due diligence are (1) whether the plaintiff acted as an ordinary [sic] prudent person would act under the same circumstances, and (2) whether the plaintiff acted diligently up until the time the defendant was served. *$ 6,453.00,* 63 S.W.3d at 536.[43]

At the time of seizure, the State knew Mr. Alcorn was a potential claimant and he was duly served.[44] The State's next effort to determine other potential claimants on the vehicles was to run the certificate of title with the Texas Department of Motor Vehicles.[45] The State found that Mr. Rackley and Mr. Shamsher were listed as owners of one of the vehicles each.[46] The owner listed on a certificate of title creates a presumption of ownership, but it is not conclusive.[47] Despite that, the State served both Mr. Rackley and Mr. Shamsher anyway.[48] In conclusion, the record shows that the State promptly served process via citation on

---

[43] *Id.* at 744-5.
[44] I C.R. 10, 21.
[45] *Id.* at 10-1.
[46] *Id.*
[47] *Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.*, 2 S.W.3d 482, 485 (Tex. App. Tyler 1999).
[48] I C.R. 19-22.

all known parties by March 28, 2014, which was twenty-three days after seizure.[49] Service of these parties was well within the statute of limitations.

The State did not serve Appellant because the State did not know that Appellant was a potential claimant. The record does not show that Appellant was listed as an owner on any certificate of title. Furthermore, there was no other evidence in the record at that time to suggest that Appellant was an owner. Indeed, it was not until July 10, 2014, when Appellant responded to the State's request for admission that Appellant asserted a "monetary and community property interest."[50] Later that month, in affidavits made by Appellant and her counsel, Appellant finally asserted her status as co-owner of the vehicles.[51] Once the State was made aware of Appellant's interest in the vehicles, the State amended its Notice of Seizure and Intended Forfeiture on August 5, 2014 to include Appellant.[52]

The record also does not show that Appellant was a possessor at the time of seizure and thus entitled to service of process.[53] The Appellant's affidavit shows only that Appellant was present on the premises at the time the vehicles were

---

[49] *Id.* at 19-24.
[50] I C.R. 247; Please note that although Appellant claims a community property interest in the vehicles here, the fact that property to be forfeited is community property is no bar to forfeiture. *Amrani-Khaldi*, *supra* note 20.
[51] *Id.* at 226, 234.
[52] *Id.* at 331.
[53] TEX. CODE CRIM. PROC. art. 59.04(j).

seized.[54] Appellant was allowed to remove items from the vehicles, but the mere fact that Appellant had personal property in the vehicle does not show control and dominion over the vehicle as such to give rise to the inference that she was in *actual possession at the time* of the seizure – rather, it shows, along with Appellant's contentions that she occasionally drove the cars, that at best Appellant may have been in possession of the vehicles at some point in the past.[55]

Considering the argument *supra*, the record shows that the State was not aware that Appellant was a potential claimant. Therefore, she was not served. The record also shows that, as required by *$24,156.00*, the State acted as a prudent person in the same situation would have; the State consulted official records to ascertain potential owners,[56] the State promptly served all known parties,[57] and there was no other delay by the State.[58] Moreover, the lack of knowledge of Appellant's status as potential claimant is a reasonable excuse for lack of timely service as contemplated by *$24,156.00*.

In conclusion, the Court should affirm the ruling of the trial court and find that that forfeiture is not barred by the statute of limitations. The Appellant's answer, which is a general appearance, dispensed with the necessity of service of

---

[54] I C.R. 225.
[55] *Id.*
[56] I C.R. 10-1.
[57] *Id.* at 19-24.
[58] *Id.* at 10-24.

process as set forth in *$27,920.00*. However, should the Court find that *$24,156.00* controls, then alternatively the State acted with due diligence because the State has set forth a reasonable excuse to explain the lack of timely service on Appellant.

ISSUE TWO: THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT WAS APPROPRIATE BECAUSE THE STATE ESTABLISHED PROBABLE CAUSE AND ESTABLISHED THAT THE VEHICLES WERE USED IN THE COMMISSION OF A FELONY, AND FINALLY APPELLANT'S DEFENSES LACK MERIT.

1. THE STATE ESTABLISHED PROBABLE CAUSE TO SEIZE THE VEHICLES AND USE OF THE VEHICLES IN THE COMMISSION OF A FELONY BASED ON THE CONFIDENTIAL INFORMANT'S INFORMATION FOUND IN DEPUTY WHITE'S AFFIDAVIT.

Appellant contends that Deputy White's affidavit is insufficient to establish probable cause and use of the vehicles in the commission of a felony for a number of reasons. Appellant points to (1) the affiant's lack of personal knowledge with regard to what is depicted on the videos, (2) the inapplicability of Mr. Alcorn's deemed admission to Appellant, and, finally, (3) the lack of credibility and reliability of the affiant's confidential informant. Even assuming the Court finds merit in Appellant's first two contentions, the credibility and reliability of the confidential informant has been shown.

In *State v. Duarte*, the court explains the rules regarding information gained from confidential informants:

15

Confidential informants—even though culled from the "criminal milieu"—may be considered reliable tipsters if they have a successful "track record." As Professor LaFave points out, "Lower courts have with virtual unanimity held that a declaration that the informant's past information has led to convictions is a sufficient showing of the informer's credibility." But tips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable.[59]

Here, there is no evidence to show that affiant's confidential informant has a track record that has led to past convictions. As such, it is necessary to couple the confidential informant's tips with facts that show he or she was credible or reliable.[60] The affidavit shows on its face a number of details that lead to inferences establishing the confidential informant's credibility or reliability. First, the affidavit shows that the confidential information knew exactly what sort of drug Mr. Alcorn was selling at the present time when he arranged the sale.[61] The fact that the confidential informant knew that Mr. Alcorn was specifically selling crack cocaine, out of the wide spectrum of illicit substances that are known to be available in the State of Texas, shows credibility or reliability. Second, the

---

[59] *State v. Duarte*, 389 S.W.3d 349, 357 (Tex. Crim. App. 2012).
[60] *Id.*
[61] I C.R. 10

affidavit shows that the confidential informant was able to set up multiple drug sales with Mr. Alcorn in order to prove Mr. Alcorn was engaged in the ongoing sale of drugs.[62] This shows a great deal more credibility and reliability than a one-time sale would tend to. Finally, the fact that the affidavit shows that the confidential informant helped arrange sales that confirm Mr. Alcorn's *modus operandi*, which is to meet at a given location and conduct the sale via automobile, tends to show credibility and reliability.[63]

All these facts taken together show that the hearsay information garnered from the confidential informant was indeed credible and reliable. Thus, even assuming the Court finds merit in Appellant's contentions that (1) the affiant lacked personal knowledge with regard to what occurred in the videos and that (2) Mr. Alcorn's deemed admissions are inapplicable against Appellant, the credible and reliable nature of the hearsay information independently establishes probable cause to support the seizure. Additionally, the same information shows that the vehicles at issue were used in the commission of a felony.

It is important to note a minor point here. As mentioned *supra*, Appellant contends that the affidavit cannot show that the vehicles are proceeds or acquired with proceeds of illegal activity. Even assuming that is true, that contention does

---

[62] *Id.*
[63] *Id.*

17

not address the fact that the vehicles were used in the commission of a felony. The information from the confidential informant shows that the vehicles were used in two separate drug sales.[64] Appellant further contends that the State can only show use of the vehicles in these two instances. Even if that is true, Appellant admits that the vehicles were indeed used in the commission of a felony.

2. APPELLANT'S STATUTE OF LIMITATIONS, INNOCENT OWNER, AND EIGTHTH AMENDMENT PROPORTIONALITY DEFENSES LACK MERIT.

A. STATUTE OF LIMITATIONS DEFENSE

For a full discussion of this issue, please see Issue One, Subsection One, *supra*.

B. INNOCENT OWNER DEFENSE

Appellant asserts the innocent owner defenses and, furthermore, contends that *Amrani-Khaldi* is bad law and should therefore be overruled. *Amrani-Khaldi* holds that community property is not exempt from forfeiture where such property is used by a spouse in such a manner as to contravene TEX. REV. CIV. STAT. ANN. art. 4476-15 § 5.03 (1976), even though such property is so used by one spouse without the knowledge and consent of the other spouse.[65] This rule is well-settled

---

[64] *Id.*

[65] *Amrani-Khaldi*, 575 S.W.2d at 668-9.

and has been followed by numerous other cases since it was decided.[66] Appellant argues that *Amrani-Khaldi* should be overturned because (1) forfeiture suits are *in rem* and, thus, there is no personal liability to pass onto the spouse, (2) the Texas Family Code allows one spouse to create liability but does not require it, and (3) that *Amrani-Khaldi* essentially allows a *corruption of blood* style liability.

Despite Appellant's contentions, the reasoning in *Amrani-Khaldi* is well-founded. Were Appellant's rules to be applied in future cases, virtually any forfeiture of property from a married person would be barred by testimony from the other spouse that he or she did not know that the property in question was either proceeds of or being used in the commission of illicit activity. This would effectively allow any married person to shield property gained by or used in illicit activity from asset forfeiture simply by virtue of his or her status as a married person. Such a rule would completely undermine the well-settled rule that spouses may incur liability on community property through unilateral action.[67]

## C. EIGHTH AMENDMENT PROPORTIONALITY DEFENSE

Appellant contends that the Excessive Fines Clause of the Eighth Amendment, as applied in *United States v. Bajakajian*, bars forfeiture in this

---

[66] *See Gaston v. State*, 641 S.W.2d 261, 262 (Tex. App. Houston 14th Dist. 1982, writ denied); *$18,800 in United States Currency v. State*, 961 S.W.2d 257, 259 (Tex. App. Houston 1st Dist. 1997); *Hopkins v. State*, 2003 Tex. App. LEXIS 1448, 3 (Tex. App. Fort Worth Feb. 13, 2003).
[67] TEX. FAM. CODE. ANN. § 3.202.

case.[68] *Bajakajian* holds that in order to satisfy the Excessive Fines Clause, (1) the property must have been an instrumentality of the crime committed and (2) the value of the property must be proportional to the culpability of the crime committed.[69] Appellant cites *1996 Dodge X-Cab Truck v. State* to illustrate this principle.[70] In *Dodge X-Cab*, the police arrested the owner of a vehicle for an outstanding warrant. While inventorying the vehicle, the police discovered straws containing trace amounts of drugs.[71] The owner was convicted of misdemeanor possession instead of the original state jail felony charge.[72] The vehicle was forfeited by the State.[73]

On appeal, the court ruled that the forfeiture was violative of the Excessive Fines Clause insofar as the mitigation from felony punishment to misdemeanor punishment showed the court that there was a diminished level of culpability in this case.[74] The court further remarked that the amount of drugs in the owner's possession was so small that it could barely be measured – prompting the court to

---

[68] *United States v. Bajakajian*, 524 U.S. 321 (1998).
[69] *Id.* at 327.
[70] *1996 Dodge X-Cab Truck v. State*, 122 S.W.3d 422, 423 (Tex. App. Beaumont 2003, no pet.).
[71] *Id.* at 423.
[72] *Id.* at 427.
[73] *Id.* at 422.
[74] *Id.* at 427.

find an even lower level of culpability.[75] The court then goes on to observe that had the owner been charged with the felony, the forfeiture would have been warranted.

Comparing *Dodge X-Cab* to the instant case, the facts are distinguishable. Here, Mr. Alcorn pled to Delivery of Controlled Substance Less Than One Gram, Enhanced. This charge accounts for the sale of drugs as opposed to the possession of a trace amount of drugs. The disparity in the level of culpability between these two offenses is self evident – one can see that the forfeiture arose from a set of facts indicting a far higher level of culpability.  Therefore, the forfeiture cannot be thought to implicate the Excessive Fines Clause and Appellant's Eighth Amendment proportionality defense ultimately lacks merit.

In conclusion, all of the Appellant's defenses, for the reasons detailed *supra*, lack merit. First, Appellant's answer in this case waived the statute of limitations defense or the State's due diligence and reasonable excuse provide for the lack of timely service. Second, Appellant cannot assert an innocent owner defense because the rule in *Amrani-Khaldi* controls. Third, Appellant's Eighth Amendment proportionality defense is lacking because the felony conviction in this case shows a heightened level of culpability as such to justify the forfeiture.

---

[75] *Id.*

## PRAYER FOR RELIEF

Appellee prays that this Court find that Appellant may not assert the statute of limitations defense and affirm the trial court's grant of summary judgment to the State. Alternatively, Appellee prays that the Court remand the case to trial court.

Respectfully submitted,

Joseph P. Johnson
Assistant County & District Attorney
204 N. Central
Cameron, Texas 76520
Telephone: 254/697-7013
Fax: 254/697-7016
Email: daoffice@milamcounty.net

/s/Joseph P. Johnson_____
JOSEPH P. JOHNSON
Texas State Bar Number 24092587
ATTORNEY FOR THE STATE

## CERTIFICATE OF SERVICE

This is to certify that on April 24, 2015, a true and correct copy of the above and foregoing document was served on Benton Ross Watson, counsel for the Appellant, by electronic transmission at ross@texastopdefense.com. Electronic transmission was reported as complete.

_____/s/Joseph P. Johnson____
Joseph P. Johnson

<u>CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4</u>
Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitations of TEX. R. APP. P. 9.4(i) because this brief contains 4,749 words, excluding the parts of the brief exempt by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements and the type style requirements of Tex. R. App. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using Microsoft Word in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3. The electronic file is virus and malware free.


___/s/Joseph P. Johnson_____
Signature of Filing Party

___Joseph P. Johnson_____
Printed Name

<u>Milam County District Attorney's Office</u>
Firm

_____<u>April 24, 2015</u>_____
Date